UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRODIGY FINANCE CM2021-1 DAC,<br><br>Petitioner,<br><br>v.<br><br>DAVID DACOSTA ABOAGYE,<br><br>Respondent. | Civ. No. 25-16283 (RK)(JBD)<br><br>**OPINION** |

Petitioner Prodigy Finance CM2021-1 DAC ("Prodigy") has filed this action to confirm an arbitration award obtained against respondent David Dacosta Aboagye. Presently before the Court is Prodigy's motion for electronic service pursuant to Federal Rule of Civil Procedure 4(e).  [Dkt. 5.]  The Court has considered the papers submitted in support of the motion, *id.*, and the supplemental affidavit of diligent effort and inquiry, [Dkt. 9].  For the reasons set forth below, the Court will grant the motion.

## I.    BACKGROUND

In July 2019, Aboagye entered into a loan agreement with Prodigy's predecessor in interest, Prodigy Finance Limited.  [Dkt. 1] at 2-3.  When Aboagye entered into the loan agreement, he provided an address in Ghana and an email address.  [Dkt. 5] at 1.  After a series of assignments, in July 2021, Prodigy received all of the legal and beneficial rights under the loan agreement.  [Dkt. 1] at 3-4.

In 2020, Aboagye began to fail to make loan repayments.  *Id.* at 7.  When Prodigy contacted him by email about his missed payments, Aboagye replied using

1

his previously provided email address. [Dkt. 1-9.] As Aboagye continued to fail to make loan payments, Prodigy variously contacted and communicated with him via mail, email, and telephone. *Id.*; [Dkt. 1] at 7-8. During this time, Aboagye continued to respond by email and even notified Prodigy in October 2021 that his physical address was no longer in Ghana and that he then resided in Somerset, New Jersey. *Id.*; [Dkt. 5] at 1-2. Yet the next month, in November 2021, Aboagye communicated to Prodigy by email that the impact of the late payments on his credit score may affect his ability to rent an apartment for the winter of 2022. *Id.*

In May 2022, Prodigy sent a termination notice to Aboagye, informing him that it had terminated the loan agreement and the outstanding balance was due immediately. [Dkt. 1] at 9. In July 2023, after the termination, Aboagye communicated that he was financially constrained, that his United States employment authorization had expired, and that he was considering relocating to Canada. [Dkt. 1-9] at 111. He also stated that he was working to regain his United States employment status. *Id.* Prodigy followed up with him in August 2023 and asked if he had relocated to Canada; Aboagye responded that he had no updates. *Id.* The last payment that Prodigy received from Aboagye was nominal and sent in December 2023. [Dkt. 1] at 9.

In February 2024, Prodigy again reached out to Aboagye for an update not only on his loan payments, but also his employment status. [Dkt. 1-9] at 132. Aboagye responded to Prodigy's emails in March 2024 with a simple "sure thanks" regarding setting up a call, but provided no substantive information over email. *Id.*

2

at 134.  In April 2024, Aboagye answered one of Prodigy's attempts to contact him by telephone, prompting Prodigy to email him to confirm whether he had secured employment or a green card.  *Id.* at 137.  In May 2024, Aboagye emailed that he was "not out of the woods yet" and could not commit to loan payments.  *Id.* at 138. The last communication Prodigy received from Aboagye was an email sent in September 2024.  [Dkt. 1] at 7; [Dkt. 1-9] at 153.  That email did not communicate any information about his current or future location.

A year later, in May 2025, after Aboagye failed to pay the balance or to discuss alternative resolution methods, Prodigy notified Aboagye of its intent to pursue arbitration and invoked the arbitration clause in the loan agreement. [Dkt. 1] at 7.  Aboagye did not participate in the arbitration.  [Dkt. 1-2] at 1-2 (noting that Aboagye did not submit a required "statement of defense" in the arbitration, despite receiving an extension).  The appointed arbitrator concluded that Prodigy sought to notify Aboagye of the default, that it was entitled to terminate the loan, and that it did so validly; accordingly, the arbitrator awarded Prodigy $85,357.24, plus interest, fees, and costs.  [Dkt. 1] at 9-10; [Dkt. 1-2] at 4 (outlining the total final award).  Aboagye did not make any payments to satisfy the arbitration award, prompting Prodigy to file this action to confirm the award. [Dkt. 1] at 10-11.

According to its motion papers, after filing the petition but before attempting to serve Aboagye, Prodigy conducted a comprehensive background search in an effort to locate a residential address or addresses to serve Aboagye personally.

[Dkt. 9] at 1-2.  When the background search confirmed that the most recent residential address was the same Somerset, New Jersey address that Aboagye had previously provided in October 2021, Prodigy attempted to serve him at that address in October 2025.  *Id.*; [Dkt. 5] at 2-3.  The process server, however, discovered that the residence was vacant.  *Id.*; [Dkt. 9-1].  The process server confirmed with the building manager that Aboagye no longer resided there and did not leave another address on file or a forwarding address.  *Id.*; [Dkt. 9-1] (affidavit of nonservice that includes photos of the vacant unit).

Upon a first review of the present motion, the Court directed Prodigy to file an affidavit of diligent effort and inquiry, providing more details regarding the comprehensive background check that it conducted and the steps that it took to attempt to serve Aboagye by traditional means.  [Dkt. 8.]  Prodigy has done so. [Dkt. 9.]  In its affidavit, Prodigy clarified that its comprehensive background check collected extensive publicly available information using personal information previously provided by Aboagye to verify his residential address.  *Id.* at 1-2. The search entailed a thorough review of criminal records, employer records, driver's license information, professional licenses and affiliations, business affiliations, property records, judgments and liens, voter registrations, and possible relatives, associates, and neighbors.  *Id.*  The background check also confirmed that the Somerset, New Jersey address was Aboagye's most recent residential address.

The affidavit of diligent effort and inquiry further detailed Prodigy's recent unsuccessful attempts to reach Aboagye by telephone and email.  *Id.* at 2-3.  Prodigy

4

called two telephone numbers that Aboagye previously used and left voicemails when possible. *Id.* at 3. Aboagye did not answer or return any calls. *Id.* Prodigy also attempted to reach Aboagye by sending an email requesting his current residential address for purposes of this suit to the email address Aboagye routinely used to contact Prodigy regarding loan payments. *Id.* Aboagye did not answer the email, but Prodigy received confirmation the email was delivered. *Id.* Prodigy made a final, fruitless attempt to contact Aboagye by telephone and left a voicemail. *Id.* at 4. Again, Aboagye did not answer or return the call. *Id.*

In sum, Prodigy has no knowledge of Aboagye's current physical location but has successfully contacted him in the past, numerous times, via email. Prodigy now requests that the Court authorize service on Aboagye via email because it is reasonably calculated to inform him of the pending action. [Dkt. 5] at 1, 3.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 4(e) governs service on an individual located within a judicial district of the United States. Fed. R. Civ. P. 4(e). Rule 4(e)(1) permits service on an individual in the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ."[1] *Id.* Because Aboagye's last known

---

[1]    Federal Rule of Civil Procedure 4(e) also permits service on an individual within a judicial district of the United States by "leaving a copy of [the summons and complaint] at the individual's dwelling place or usual abode . . . ." Fed. R. Civ. P. 4(e)(2)(B). The Court does not consider this option here because Aboagye's current physical location, and therefore his "dwelling place or usual abode," is unknown. Thus, personal service or substituted service may be Prodigy's only options. *See, e.g., Cox v. Quigley*, 141 F.R.D. 222. 225-226 (D. Maine 1992)

residential address was in New Jersey, the Court looks to New Jersey state court rules governing service of process, assuming Aboagye is still within New Jersey.

Under New Jersey Court Rule 4:4-4(a), personal service is the "primary method of obtaining in personam jurisdiction over a defendant" in New Jersey. N.J. Ct. R. 4:4-4(a).  However, when personal service is not possible, the New Jersey Court Rules allow for "substituted or constructive service."  N.J. Ct. R. 4:4-4(b). Three forms of substituted service are permitted so long as the movant diligently attempted to serve the defendant by personal service.  N.J. Ct. R. 4:4-4(b) (requiring an affidavit of "diligent effort and inquiry [that] personal service cannot be made" prior to allowing substituted service).  Relevant here is the method of substituted service that permits service "by court order, consistent with due process of law." N.J. Ct. R. 4:4-4(b)(3).

Before seeking to serve by court order pursuant to New Jersey Court Rule 4:4-4(b)(3), the movant must submit an affidavit of diligent effort and inquiry that "disclose[s] the efforts made to ascertain the [respondent]'s whereabouts . . . ." *Modan v. Modan*, 742 A.2d 611, 613 (N.J. Super. Ct. App. Div. 2000).  To determine whether a movant has exercised diligence in this case, the Court must conduct a fact-sensitive and qualitative inquiry that considers the movant's efforts to locate and serve the relevant person.  *See id.* (examining cases).  Diligence requires that a movant follow up on the information that it possessed or could reasonably obtain;

---

(considering Rule 4(e)(2)(B)'s predecessor in the context of a transient or homeless defendant and what means of service are available).

it does not require a movant to exhaust all possible means of finding the person. *H.D. Smith, LLC v. Prime Rite Corp.*, Civ. No. 16-294 (MAH), 2016 WL 3606785, at *2 (citing *Modan*, 742 A.2d at 613). In sum, if the movant has exercised reasonable diligence, then "a court may order an alternative means of service that is consistent with due process." *Guardian Life Ins. Co. of America v. Estate of Matesic*, Civ. No. 16-643 (WJM), 2016 WL 3763340, at *2 (citing N.J. Ct. R. 4:4-4(b)(3)).

Separately, Federal Rule of Civil Procedure 4(f) governs service when an individual is in a foreign country. Fed. R. Civ. P. 4(f). In that situation, service is permitted: (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention"; (2) "if there is no internationally agreed means, . . . [then] by a method that is reasonably calculated to give notice:" (i) "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;" (ii) "as the foreign authority directs in response to letter rogatory or letter of request;" or (iii) by personal service or certified mail; or (3) "by other means not prohibited by international agreement, as the court orders." But there is no hierarchy to these methods of service, and a party may effect service on an individual in a foreign country by any of the identified means. *Vanderhoef v. China Auto Logistics Inc.*, Civ. No. 18-10174 (CCC), 2019 WL 6337908, at *2 (D.N.J. Nov. 26, 2019) (citations omitted).

When a party is reasonably believed to be in a foreign country, but the party's location is unknown, the Court has discretion to order service "by other means not

7

prohibited by international agreement[.]"  Fed. R. Civ. P. 4(f)(3); *see also Premier Trailer Leasing, Inc. v. DM World Transp., LLC*, Civ. No. 19-2558 (AAS), 2020 WL 886671, at *2 (M.D. Fla. Feb. 24, 2020) (citing *Chanel, Inc. v. Zhixian*, Civ. No. 10-60585 (JIC), 2010 WL 1740695, at *1 (S.D. Fla. Apr. 16, 2009)).  However, a movant should attempt service by traditional means before asking the Court to exercise its discretion in directing service pursuant to Rule 4(f)(3).  *See Bravetti v. Liu*, Civ. No. 12-7492 (MAS), 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013) (noting that a demonstration that service by traditional means is difficult supports a request for Rule 4(f)(3) service); *Vanderhoef*, 2019 WL 6337908, at *2 (recognizing that courts grant service under Rule 4(f)(3) when the movant has "made a good faith effort to locate and serve defendant[] by traditional means."); *Ryan v. Brunswick Corp.*, 2002 WL 1628933, at *1 (W.D.N.Y. May 31, 2002) (requiring a movant to show reasonable attempts to effect service on the defendant, and the circumstances show that the attempted methods of service are "unduly burdensome or that are untried but likely futile" prior to requesting Rule 4(f)(3) service to prevent parties from seeking Rule 4(f)(3) service in the first instance); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (permitting service under Rule 4(f)(3) after plaintiff demonstrated that it was unable to perfect service under Rule 4(f)(1) or locate defendant's current location after a diligent inquiry).

Ultimately, if the Court exercises its discretion, the method of service ordered also must comply with due process and be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

8

them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

## III.   DISCUSSION

Because Aboagye's physical location is unknown, the Court analyzes Prodigy's requested method of substituted service under both Rule 4(e) and Rule 4(f).  The Court ultimately concludes that, whether Aboagye is still within the United States or if he is now abroad (in Canada or Ghana), service by email is permitted under both rules and is reasonably likely to apprise him of the pendency of this action.

### A.   Rule 4(e)

As Aboagye's last known physical address was in New Jersey, the Court's analysis starts with Federal Rule of Civil Procedure 4(e) and New Jersey Court Rule 4:4-4(b).

#### 1.   Diligence

On review of the record before it, the Court concludes that Prodigy has exercised the requisite diligence in attempting to locate and serve Aboagye by traditional means.  *See* N.J. Ct. R. 4:4-4(b) (requiring a diligent effort and inquiry that personal service cannot be made prior to allowing substituted service).

First, Prodigy attempted to serve Aboagye by traditional means through personal service.  Prodigy's comprehensive background check identified Aboagye's last known address as a residential address in Somerset, New Jersey.  While Prodigy's singular attempt at personal service at this address was unsuccessful, it

9

also demonstrated that any further attempts would be futile.  The Somerset address was vacant; photos confirmed the unit was unoccupied, and the building manager confirmed that Aboagye no longer lived there, did not leave a forwarding address, and did not leave an address on file.  Further attempts to personally serve Aboagye at a vacant, unoccupied unit clearly would be futile.  Moreover, without a forwarding address or address on file, Prodigy had no other information to follow up on after the failed service attempt.

Second, Prodigy followed up on all information it did possess and could reasonably obtain by attempting to serve Aboagye at the Somerset address. As detailed in its affidavit, Prodigy performed a comprehensive background check that endeavored to find Aboagye's most recent residential address.  The search did not identify an address other than the Somerset address, and the only other address Aboagye previously provided was a much older address in Ghana.  Thus, the Court finds that Prodigy capitalized on the information that it possessed and could reasonably have obtained in seeking to serve Aboagye by traditional means.

In addition to these attempts, Prodigy made several other attempts to contact Aboagye by telephone and email.  It attempted to contact him through the two telephone numbers that he had used to communicate previously and left voicemails. Prodigy also sent him emails notifying him of the action and requesting his most recent address for service purposes.  All of Prodigy's calls and emails went unanswered, even though Aboagye previously had communicated with it using both telephone numbers and the email address.  Thus, the Court concludes that Prodigy

has demonstrated diligence in ascertaining Prodigy's whereabouts and attempting to serve him by traditional means.

### 2.   Due Process

Next, the Court must determine whether Prodigy's requested method of substituted service—in this case, email—satisfies the constitutional requirements of due process. *See* N.J. Ct. R. 4:4-4(b)(3) (allowing substituted service "by court order, consistent with due process of law."). To satisfy due process, a proposed method of service must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

As a general matter, email is an accepted method of substituted service. Courts allow service by email when the record demonstrates, under the circumstances, that email will reasonably likely apprise the defendant of the pendency of the action. *See U.S. Sec. & Exch. Comm'n v. Vuuzle Media Corp.*, Civ. No. 21-1226 (CLW), 2021 WL 1731947, at *3 (D.N.J. May 3, 2021) (allowing service by email when email was the method of service most likely to reach the defendant); *Menon v. Corbett*, Civ. No. 21-8384 (JBC), 2023 WL 4946972, at *3-5 (D.N.J. Aug. 3, 2023) (allowing service by email when the defendant used and corresponded with plaintiff using the email address in question); *but see Vaswani, Inc. v. Manjunathamurthy*, Civ. No. 20-20288 (CLW), 2021 WL 1541071, at *2-3 (D.N.J. Apr. 19, 2021) (denying service by email when plaintiff has not demonstrated the defendant is the owner of the purported email address).

11

Here, the Court is satisfied that Aboagye owns and uses the email address in question. Prodigy has demonstrated that Aboagye is likely to receive the petition and summons at the relevant email address. Between December 2020 and September 2024, Aboagye sent over 50 emails from the email address to Prodigy. All of these communications concerned the loan, payments, or potential arbitration. Aboagye's numerous emails to Prodigy demonstrate that he owns the email address and actively uses it. Further, Prodigy's affidavit of diligent effort and inquiry confirmed that Aboagye received its emails. Although Aboagye did not respond to Prodigy's most recent emails, the emails did not bounce back, and Prodigy received confirmation that they were delivered. Given that Prodigy has successfully and consistently communicated with Aboagye through this email address, and the emails are and have been delivered, the Court concludes that service by email is reasonably likely to apprise Aboagye of the pendency of this action.

\*

Prodigy demonstrated diligence by attempting to serve Aboagye by traditional means at his last known residential address, performing a comprehensive background check to follow up on any reasonably obtainable information, and contacting him at his known telephone numbers and his known email address. And under the circumstances, the Court concludes that service by email is reasonably likely to apprise Aboagye of this action and therefore will satisfy due process because Aboagye has consistently communicated with Prodigy via his

12

email address to discuss the loans at issue.  Accordingly, the Court will permit Prodigy to serve Aboagye by email pursuant to Rule 4(e).

### B.      Rule 4(f)

Because there is some reason to believe that Aboagye is no longer within the United States, the Court, out of an abundance of caution, also addresses whether service by email is appropriate under Rule 4(f).  The Court's analysis here is tailored to the record, which reflects that Aboagye previously lived in Ghana before moving to the United States, and that he contemplated moving to Canada thereafter.  Prodigy's reasonable attempts to locate Aboagye have been fruitless, and it has no way of confirming Aboagye's location when he does not respond to its telephone calls or emails.  Thus, after Prodigy's reasonable and diligent efforts, Aboagye's location, even if outside the United States, is unknown.

Nonetheless, the Court concludes, under the circumstances, that attempting to serve Aboagye by means other than email would be futile.  *See Ryan*, 2002 WL 1628933, at *1 (permitting Rule 4(f)(3) service when other methods of service are unduly burdensome or likely futile).  Accordingly, the Court must determine whether Rule 4(f) permits service by email in these circumstances.  The Court concludes that it does.  First, the Court looks to Rule 4(f)(1), which provides that an individual abroad may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]"  Fed. R. Civ. P. 4(f)(1).  Canada is a signatory to the Hague Convention.  HCCH,

13

Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 ("Status Table") (last visited May 26, 2026).  But the Convention does not apply "where the address of the person to be served with the document is not known." Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, art. 1 ("Hague Convention").  Separately, Ghana is not a signatory to the Hague Convention, *see* Status Table, and the Court is not aware of Ghana having agreed to any other relevant international means of service.  Accordingly, if Aboagye is in Canada or Ghana, Rule 4(f)(1) would not apply.

Second, the Court turns to Rule 4(f)(2), which provides that an individual abroad, when there is no internationally agreed means, may be served: (i) in accordance with the foreign country's law for service; (ii) as the foreign country's Central Authority directs in response to letters rogatory; or (iii) personal service or certified mail, unless prohibited by the foreign country's laws.  Fed. R. Civ. P. 4(f)(2).  Since Aboagye has no known physical address, it is impossible to serve him in compliance with Canada's laws (even if by personal service or certified mail) or to serve him as directed by the Central Authority in response to letters rogatory.  Canada is comprised of territories and provinces, each with its own distinct rules or laws for service; without knowing Aboagye's location, determining which law applies is impossible.[2]  Similarly, without knowing his physical location,

---

[2]    *Compare* O. Reg. 131/04, R. 16.01 (Can.) (requiring personal service or an alternative to personal service); O. Reg. 131/04, R. 16.03 (Can.) (permitting an alternative to personal service on order of the court and identifying means of

there is no way to send letters rogatory to the relevant Central Authority in Canada and its several provinces and territories.  *See* HCCH, List of Central Authorities designated by Canada, https://assets.hcch.net/docs/15b5f973-5121-49f0-8a73-9b44d02c7dc5.pdf (last visited May 26, 2026).  Accordingly, if Aboagye is in Canada, Rule 4(f)(2) would not apply (or specifically permit substituted service by email).

If Aboagye is in Ghana, by contrast, substituted service by email pursuant to Rule 4(f)(2) is permissible.  Courts in Ghana allow substituted service by email so long as a party demonstrates that personal service is impracticable.  *See* Ord. 7 R. 2 ("Personal Service") C.I. 47 (Ghana) (requiring personal service unless a court rule or a court otherwise directs); Ord. 7 R. 6 ("Substituted Service") C.I. 47 (Ghana) (permitting substituted service when a movant demonstrates by affidavit that personal service is impracticable); *Lutterodt v. Acquah*, C11/36/2023, Judgment, Ghana High Ct., at 3 (July 26, 2023), https://ghalii.org/akn/gh/judgment/ghacc/2023/1119/eng@2023-07-26 (last visited May 26, 2026) (permitting substituted service through WhatsApp and email after the defendant refused to accept service by advising the mail delivery service called the wrong telephone number to deliver the notice); *Kesson-Smith v. Osei*, C5/58/2024, Judgment, Ghana Cir. Ct., at 3 (Feb. 19, 2025),

---

alternative service); O. Reg. 131/04, R. 16.04 (Can.) (permitting "substituted service" when personal service or an alternative to personal service is impractical), *with* N.S. R. Civ. P. 31.02 (Can.) (requiring notice by personal service or an alternative method); N.S. R. Civ. P. 31.10 (Can.) (allowing substituted service if "the party cannot be located, the party is evading service, or justice requires" substituted service, prescribing examples to satisfy each scenario, and outlining methods of substituted service permitted for each scenario).

https://ghalii.org/akn/gh/judgment/ghacc/2025/63/eng@2025-02-19 (last visited

May 26, 2026) (permitting substituted service through WhatsApp and email after

the defendant could not be served personally).  Ghana's requirement that a movant

demonstrate that personal service is impracticable by affidavit mirrors New

Jersey's requirement that a movant demonstrate that personal service cannot be

made by affidavit of diligent effort and inquiry before allowing substituted service.

*Compare* Ord. 7 R. 6 ("Substituted Service") C.I. 47 (Ghana) (permitting substituted

service when a movant demonstrates by affidavit that personal service is

impracticable), *with* N.J. Ct. R. 4:4-4(b) (requiring an affidavit of "diligent effort and

inquiry [that] personal service cannot be made" prior to allowing substituted

service).  For the same reasons that Prodigy has satisfied its diligence obligation

under Rule 4(e) (as explained above), the Court is satisfied that Prodigy's affidavit

would satisfy Ghana's impracticability standard.  And because courts in Ghana

allow service by email as a method of substituted service, serving Aboagye by email

is consistent with Ghanaian law.  Thus, if Aboagye is in Ghana, Prodigy would be

permitted to serve him by email pursuant to Rule 4(f)(2).

Finally, even if not specifically authorized under Rule 4(f)(1) or Rule 4(f)(2),

the Court may permit substituted service by email if that method is not otherwise

"prohibited by international agreement[.]"  Fed. R. Civ. P. 4(f)(3).  The Hague

Convention does not apply here pursuant to Rule 4(f)(1), but it may inform whether

service by email is prohibited by international agreement under Rule 4(f)(3).

Article 10 of the Hague Convention provides that judicial documents can be sent

16

"by postal channels" to individuals in foreign countries.  Hague Convention, art. 10.

Some courts have concluded that "postal channels" implicitly prohibits service by

email; some have concluded that it does not.[3]  The Third Circuit has not addressed

the question, and this Court need not weigh in here, either.  "[C]ompliance with the

[Hague] Convention is mandatory in all cases *to which it applies*[.]"

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (emphasis

added).  As explained above, the Hague Convention does not apply in these

circumstances because Aboagye's current address is unknown and Ghana is not a

signatory.  Accordingly, the Court concludes that service by email is permitted

under Rule 4(f)(3) because it is not prohibited by international agreement.

*

Under the circumstances, and for the same reasons explained above, if

Aboagye's unknown physical location is abroad, the Court concludes that service by

email is permissible under Rule 4(f)(2) (Ghana) and Rule 4(f)(3) (Ghana and

---

[3]     *Compare, e.g.*, *Elobeid v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014) (determining that "postal channels" may be interpreted to include email); *Agha v. Jacobs*, Civ. No. 07-1800 (RS), 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) (concluding that there is no basis to distinguish email and facsimile from the "postal channels" described in Article 10); *with Genus Lifesciences Inc. v. Tapaysa Engineering Works Pvt. Ltd.*, 2021 WL 915662, at *4 (E.D. Pa. Mar. 10, 2021) (interpreting that the plain text of "postal channels" does not include emails based on the understanding of "postal channels" at the time Article 10 was drafted); *Facebook, Inc. v. 9 Xiu Network (Shenzen) Tech Co.*, 480 F. Supp. 3d 977, 985-86 (N.D. Cal. 2020) (concluding that service by email is not permitted under Article 10 of the Hague Convention, unless an exception applies); *Jackson Lab. v. Nanjing Univ.*, Civ. No. 17-363 (JHR), 2018 WL 615667, at *4 (D. Me. Jan. 29, 2018) (identifying cases that distinguish email from postal channels to be "better-reasoned").

17

Canada), is reasonably likely to apprise Aboagye of this action, and will satisfy due process.

## IV.  CONCLUSION

For the reasons stated, the Court will grant Prodigy's motion and permit it to serve Aboagye via email.  An appropriate Order follows.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

Date:  May 27, 2026